## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DEBRA TROXELL,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:10-cv-755
Spiegel, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in

opposition (Doc. 15), and plaintiff's reply memorandum. (Doc. 18).

### I. Procedural Background

Plaintiff filed applications for DIB and SSI in February 2008, alleging disability since

July 15, 2007, due to breathing problems, acute bronchitis, vision problems, and anxiety.

Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a de novo hearing before ALJ Larry A. Temin. Plaintiff and

a vocational expert (VE) appeared and testified at the ALJ hearing. On May 7, 2010, the ALJ

issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by

the Appeals Council was denied, making the decision of the ALJ the final administrative

decision of the Commissioner.

### II. Medical Evidence

Plaintiff presented to the emergency room on September 9, 2007, after hitting her

right knee on her bed a week prior. Right knee x-rays showed effusion. She was diagnosed with a right knee sprain and given an Ace bandage wrap. (Tr. 255-57).

In December 2007, plaintiff was seen due to a several day history of cough. She was diagnosed with bronchitis, prescribed Cipro, an Albuterol inhaler, and Robitussin DM and instructed to stop smoking. (Tr. 253-55). Plaintiff was seen in the emergency room again for bronchitis on January 30, 2008. (Tr. 260-66). Plaintiff reported that she smoked one package of cigarettes a day; she was instructed to avoid smoking. (Tr. 262, 265). Plaintiff was diagnosed with acute bronchitis and given prescriptions to treat her nausea, infection, and cough. (Tr. 265)

Adrienne E. Swift, Ph.D., a clinical psychologist, conducted a consultative examination of plaintiff on April 23, 2008. (Tr. 267-73). Plaintiff reported good relationships with her family. (Tr. 267). She read, cooked simple things, did her laundry, did light cleaning, drove during the day, and went grocery shopping with someone. (Tr. 271). Dr. Swift noted during the evaluation that plaintiff was pleasant and cooperative. (Tr. 269). Her speech was clear and normal and her thought processes were organized and goal-directed. *Id*. However, her mood was depressed and slightly nervous with a restricted affect. *Id*. Plaintiff reported irritability and agitation and that she cries "all the time." *Id*. She had no suicidal ideations and no memory problems. (Tr. 270). Plaintiff appeared anxious, but she had no psychotic symptoms, hallucinations, delusions, paranoia, obsessions, or compulsions. *Id*. She was oriented, her judgment was sufficient, and her insight was intact. (Tr. 271-72). Dr. Swift diagnosed plaintiff with a major depressive disorder, single episode, moderate severity; and post traumatic stress

2

disorder (PTSD).  Plaintiff was assigned a GAF (Global Assessment of Functioning) score of 50.[1]  (Tr. 273).

Dr. Swift opined plaintiff was markedly impaired in relating to others in a work environment; moderately impaired in her ability to understand and follow instructions; moderately impaired in her ability to maintain attention to perform routine tasks; and markedly impaired in her ability to withstand the stress and pressures of day to day work activity.  (Tr. 272-73).

State agency psychologist, Karla Voyten, Ph.D., reviewed the file on May 23, 2008 and concluded that plaintiff had mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.  (Tr. 288).  According to Dr. Voyten, plaintiff could do simple, one to two step tasks in an environment with strict production quotas and superficial contact with the public.  (Tr. 276).  On October 8, 2008, after reviewing the file, Vicki Casterline, Ph.D., another state agency psychologist, affirmed Dr. Voyten's assessment.  (Tr. 318).

Plaintiff was seen in the emergency room on May 3, 2008, due to a cough.  (Tr. 298-303).  She was diagnosed with seasonal allergies and rhinitis and prescribed Claritin.  (Tr. 301).  Plaintiff was seen again on June 7, 2008 due to a lesion on her chest.  (Tr. 292-96).  She was

---

[1]A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000).  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting *self* or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34.  Individuals with scores of 41 to 50, are classified as having "serious symptoms  or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)..." *Id.* at 32.

diagnosed with a skin abscess (a boil) and prescribed Bactrim, Keflex, Vicodin, and Naprosyn. (Tr. 296-97).

Ashok Kejriwal, M.D., completed a Basic Medical Form for the local county department of Jobs & Family Services on July 30, 2008. According to Dr. Kejriwal, plaintiff is able to stand and/or walk one hour without interruption and no more than three hours in an eight-hour work day. Dr. Kejriwal opined that plaintiff is able to sit for one hour at a time and no more than four hours in an eight-hour work day. He further opined that plaintiff is able to lift/carry six to 10 pounds occasionally and frequently, and that she has moderate limitations in pushing/pulling, bending, reaching, and handling. Dr. Kejriwal concluded that plaintiff's functional limitations were expected to last for nine to eleven months. (Tr. 349-50).

Holly Wishwick, Ph.D., completed a Mental Functional Capacity Assessment for the local department of Job & Family Services on August 4, 2008. Dr. Wishwick concluded that plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Wishwick reported the plaintiff had never been involved with mental health treatment. She concluded that plaintiff would be unemployable between 30 days and nine months. (Tr. 352-53).

4

On August 27, 2008, plaintiff reported to consultative ophthalmologist, Gary G. Carothers, M.D., that she has experienced decreased visual acuity in both eyes for the past year and had burning and itching in both eyes. Her vision, with correction was 20/20 and Dr. Carothers opined she needed glasses. (Tr. 313-17). On November 4, 2008, this opinion was affirmed by state agency reviewing physician Leslie Green, M.D. (Tr. 319).

Plaintiff was seen by Bernard Lenchitz, M.D., at the Lincoln Heights Health Center on January 22, 2009, for a physical checkup and medication for depression and anxiety and breathing problems. (Tr. 324-28). She was prescribed Celexa for her depression. (Tr. 325). Dr. Lenchitz also completed a Basic Medical Form for the local department of Job & Family Services on January 22, 2009. (Tr. 354-56). Dr. Lenchitz opined that based on the diagnoses of dyspnea, depression, GERD, and on his own observations that plaintiff was not limited in her ability to stand, walk and/or sit, nor was she limited in pushing/pulling, bending, reaching, or handling. Dr. Lenchitz concluded that plaintiff was employable based on general medical observations. (Tr. 349-50). When seen on March 5, 2009, plaintiff stated her mood was improved with medications, but reported side effects including headaches, dizziness, and drowsiness. (Tr. 322).

On February 21, 2010, plaintiff presented to the emergency room for back pain. An x-ray was taken which demonstrated some mild degenerative disease but no acute bony injury. Plaintiff was diagnosed with a lumbar strain and prescribed Diclofenac and Vicodin. (Tr. 358-60).

The record also includes treatment notes for conjunctivitis (Tr. 363-68) and a visit to Mercy Hospital for chest pain but plaintiff left without receiving treatment. (Tr. 374-79).

5

## III. Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

6

2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since July 15, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: bronchitis/allergies; lumbar strain; vision deficit; major depressive disorder; and post traumatic stress disorder (PTSD) (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c).  Specifically, she can perform the requirements of work activity except as follows: She can lift/carry up to 50 pounds occasionally and 25 pounds frequently, and stand and/or walk for six hours in an eight-hour workday. She can only occasionally stoop, kneel, crouch, crawl and climb ramps and stairs. She should not climb ladders, ropes, or scaffolds, and she should avoid concentrated exposure to fumes, noxious odors, dusts, or gases. With regard to claimant's vision, she should not drive at night, and her job should not require more than occasional and gradual change from near acuity to far acuity (i.e., limited accommodation). Mentally, she is able to perform only simple, routine, repetitive tasks, and [ ] remember and carry out only short and simple instructions. She cannot interact with the general public, and cannot

7

interact with coworkers or supervisors more than occasionally. She cannot work at a rapid production-rate pace and her job should not require strict production quotas. Her job should not require more than ordinary and routine changes in work setting or duties. In addition, her job should not require more than simple reading, writing, or math.

6. The claimant is unable to perform her past relevant work as a pretzel maker, housekeeper, and deli clerk, but she is still capable of performing her past relevant work as a laborer (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 3, 1953 and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2007, through the date of this decision (20 C.F.R.404.1520(g) and 416.920(g)).

(Tr. 16-23).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

8

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff's argues that: (1) the ALJ's determination of plaintiff's residual functional capacity (RFC) is flawed, and (2) the ALJ unreasonably refused to order a physical consultative examination.

1. <u>The ALJ's RFC finding is supported by substantial evidence</u>.

Plaintiff contends that the ALJ erred in formulating plaintiff's RFC because: (1) the ALJ did not sufficiently define terms used in formulating the RFC; (2) the RFC failed to include limitations for plaintiff's non-severe impairments; (3) the RFC is not substantially supported by the evidence and fails to accord proper weight to the opinion of examining psychologist, Dr. Swift; and (4) the ALJ did not discuss the opinion or limitations provided by examining physician Dr. Kejriwal. The Court will address each issue in turn.

The ALJ determined that, because of her mental impairments, plaintiff was limited to jobs requiring no more than "simple reading, writing, or math." (Tr. 18). Plaintiff argues that the term "simple" is too vague and that without providing a more specific context, *e.g.*, a finding that plaintiff has fourth grade level reading abilities, the RFC is flawed as the VE is without sufficient information to testify as to the plaintiff's mental ability to perform work. Further, plaintiff argues that the ALJ's failure to explain his interpretation of the term "marked" as used by the physicians of record prevents the reviewing Court from being able to find that the RFC determination is supported by substantial evidence.

In response, the Commissioner asserts that the ALJ did not need to define either term. The VE did not ask for clarification of the term "simple," indicating that the VE understood the meaning of the term as evidenced by her ability to identify jobs the plaintiff could perform based on the ALJ's hypothetical. The Commissioner also notes that plaintiff's attorney had the opportunity to clarify the term at the hearing but did not. Lastly, the Commissioner argues that the ALJ is not required to define the term "marked" because the ALJ did not adopt an RFC that

10

included findings that plaintiff had "marked" limitations, and the term "marked" is defined in the regulations.[1]

The hypothetical question posed by the ALJ to the VE at the hearing concerned whether plaintiff was able to perform work based on, among other things, her ability to do "no more than simple reading or writing or math."  (Tr. 18, 67).  Based on this question, the VE testified that plaintiff could perform her past work as a laborer and other medium, unskilled level work, such as industrial cleaner, press operator, and machine finisher.  (Tr. 68).  Upon cross-examination, plaintiff's attorney questioned the VE about specific physical limitations not included in the ALJ's hypothetical, but did not seek to clarify or obtain a more precise definition of the term "simple" as it related to plaintiff's ability to read, write, or do math.

In light of the VE's ability to understand the term "simple" as used by the ALJ and to answer the hypothetical question, the undersigned does not find that the ALJ erred by not providing a more specific contextual definition.  The term "simple" is in common usage - it is not a medical term or term of art requiring expansion or clarification.  This is especially the case considering that VEs are well-versed in drawing conclusions about an individual's abilities to perform work based on their mental and physical limitations.  Because the hypothetical question is supported by the record with regard to plaintiff's ability to do "simple" reading, writing, and math, and because the VE was able to understand the question and draw conclusions based upon

---

[1] *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C) ("Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme.  A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.").

11

the terms provided, the ALJ's failure to further define the term "simple" was not erroneous. *See* Tr. 272-73 (Dr. Swift noted plaintiff's reports of difficulty with serial subtraction tasks and closing cash registers, but stated plaintiff appeared able to follow more simple work instructions without problem and plaintiff reported she felt she could manage her own finances); Tr. 33-34, 49 (plaintiff testified that she could read simple words, write some, and do some basic arithmetic and that she read while at home); Tr. 182-89 (plaintiff completed a Work History Report for the agency demonstrating her ability to read and write); Tr. 194 (plaintiff reported that reading is one of her hobbies). *See also Travis v. Astrue*, No. 09-cv-77, 2009 WL 3422770, at *11 (W.D. Wis. Oct. 22, 2009) ("[D]rawing conclusions about the skill level of work that can be performed by a person with certain mental limitations is precisely what vocational experts are trained to do."). *But see Harmon v. Astrue*, No. 5:09cv2765, 2011 WL 834138, at *4 (N.D. Ohio Feb. 8, 2011) (finding that ALJ's failure to define term "significant" when discussing number of work days that plaintiff might miss due to her condition required remand where VE provided contradictory testimony about how many days plaintiff could miss work and maintain employment).

With respect to the ALJ's failure to define the term "marked" in his disability determination, plaintiff's argument is not well-taken. The term "marked" is a term of art defined by the Social Security Regulations. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C). The requirement that an ALJ "articulate with specificity reasons for the findings and conclusions that he or she makes," *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920, at *4 (6th Cir. 1999), exists, in part, to ensure meaningful appellate review. *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). Here, as the term "marked" is commonly used in social security cases

and is defined by the regulations, it is not necessary that the ALJ define the term in his disability determination in order for the Court to undertake a meaningful review. Accordingly, the ALJ's omission of definitions for the terms "simple" and "marked" do not constitute reversible error.

Plaintiff further argues that the ALJ failed to include limitations for her non-severe impairments in formulating her RFC. The undersigned finds that the ALJ reasonably considered these impairments in his decision. The ALJ determined that plaintiff had two non-severe impairments, gastroesophageal reflux disease (GERD) and right knee sprain, and further noted plaintiff's complaints of left elbow and left knee pain. (Tr. 17). Plaintiff argues that the ALJ did not properly consider the associated limitations of these conditions in formulating plaintiff's RFC.

The medical evidence of record contains diagnoses of GERD but there is no medical evidence that plaintiff is limited in any way by this condition. (Tr. 324, 327, 333-39, 355). Plaintiff testified that she experienced painful GERD with nearly every meal, including vomiting often. (Tr. 62). However, the record demonstrates treatment for GERD only once, on October 18, 2009, at which time plaintiff reported some epigastric pain, belching, and sour fluid in her mouth, but denied nausea or vomiting and reported improvement with Tums. (Tr. 333-34). Blood work and an ultrasound revealed normal results and plaintiff was advised to take over-the-counter Prilosec. (Tr. 334). Notably, plaintiff declined medication to treat her epigastric pain. *Id.*

Although plaintiff was diagnosed with GERD and received one-time treatment for this condition, there is no evidence in the record that the GERD imposes any functional limitations

13

on her ability to work.  *See Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (mere diagnosis of disorder did not entitle claimant to benefits in absence of evidence showing she was disabled by disorder).  *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (mere diagnosis of a condition provides no indication as to the severity of the condition).  Due to the lack of evidence that plaintiff's GERD limits her work abilities, the ALJ did not err by failing to account for the condition in formulating plaintiff's RFC.[2]

Likewise, there is no evidence in the record that plaintiff is functionally limited due to her right knee sprain or asserted left elbow and left knee pain.  The only medical evidence pertaining to any of these conditions are the September 9, 2007 emergency room records documenting that plaintiff suffered from a right knee sprain after hitting her right knee on a piece of furniture and was treated for pain and minimal swelling.  (Tr. 255-57).  Plaintiff reported that the pain was mild to moderate, her knee was wrapped with a bandage, and she was directed to take Motrin for pain.  (Tr. 257).  There is no subsequent treatment of plaintiff's right knee in the record.  There is no medical evidence at all pertaining to plaintiff's complaints of left knee or left elbow pain.  The only evidence is plaintiff's testimony that she injured her left arm several years ago and experiences occasional numbness (Tr. 51, 55-56) and that she has experienced shooting pain in her left knee for approximately three years (Tr. 56-57) but has not received any medical treatment for either condition.  (Tr. 57).

---

[2] Plaintiff argues that due to her GERD she would be off task or require unscheduled breaks due to vomiting.  However, there is no medical evidence in the record supporting this assertion nor did plaintiff testify that she was limited in this way.  Rather, plaintiff simply testified that she ate smaller meals in order to avoid the effects of GERD.  (Tr. 62).

14

In light of the complete lack of any evidence that plaintiff is functionally limited by her right knee sprain or left elbow and left knee pain, the ALJ was not required to provide for these limitations in formulating his RFC. *See Foster*, 853 F.2d at 489; *Higgs*, 880 F.2d at 863. *See also* 20 C.F.R. §§ 404.1508 (impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, and not solely by claimant's statement of symptoms); 404.1528(a) (claimant's own description of impairment is not enough to establish existence of that impairment). Further, plaintiff did not testify that she was limited by any of these conditions except for being unable to mop due to occasional left arm numbness. (Tr. 50-51). The ALJ concluded that there was no evidence in the record to indicate that these conditions interfered with her ability to function and the record did not support more than minimal work-related limitations. (Tr. 17). In light of the record, specifically the lack of any medical evidence that plaintiff is functionally limited by these conditions, the ALJ's refusal to provide for these conditions in formulating plaintiff's RFC is substantially supported.

Plaintiff's third basis for arguing the ALJ erred in formulating plaintiff's RFC is that he did not properly consider the medical opinions of record. Specifically, plaintiff claims that the ALJ improperly discounted the opinion of Dr. Swift, plaintiff's one-time examining psychologist. Plaintiff contends that Dr. Swift's opinion - that plaintiff suffered from marked limitations in her abilities to relate to others and withstand work stresses - is supported by other evidence of record and, further, supports a finding that plaintiff is disabled. Plaintiff notes the VE testimony showing that an individual with these "marked" limitations (being unable to withstand work pressures and relate to others over 50% of the time) would be unable to do the

15

work previously identified under the ALJ's hypothetical question. *See* Tr. 72-73. Further, plaintiff contends that Dr. Swift's opinion is supported by the mental RFC assessment performed by Dr. Wishwick as both doctors opined that plaintiff was disabled.

As an initial matter, the Court acknowledges that an ALJ is not required to accept a physician's conclusion that her patient is disabled. Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a physician's opinion that her patient is disabled is not "giv[en] any special significance." 20 C.F.R. § 404.1527(e). *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

The ALJ addressed Dr. Swift's opinion and accorded it "less [than significant] weight." (Tr. 21). The ALJ noted that Dr. Swift's findings of marked limitations were contradicted by plaintiff's reports of daily activities both before and after her April 23, 2008 examination with Dr. Swift. In support, the ALJ cited to a March 22, 2008 Function Report in which plaintiff reported that she cooked, including complete meals with several courses, did laundry and cleaned, read, went for walks, and grocery shopped weekly for about two hours (Tr. 191-97) and to a June 24, 2008 Vocational Analysis in which plaintiff was found to have no more than moderate limitations in her mental RFC. (Tr. 202-03). The Court notes that the June 24, 2008 Vocational Analysis was incorrectly cited by the ALJ as evidence of plaintiff's reported daily activities post-examination with Dr. Swift. However, the record does include an August 3, 2008 Function Report in which plaintiff reported engaging in daily activities such as going to church,

occasionally cooking, going for short walks daily, doing light cleaning and laundry, and washing dishes twice weekly.  (Tr. 213-17).  The ALJ also explained that he discounted Dr. Swift's findings of marked limitations in light of Dr. Wishwick's subsequent mental health exam and opinion that plaintiff suffered from no more than moderate limitations.  Lastly, the ALJ stated that Dr. Swift's opinion was not consistent with the record as a whole.  The ALJ's opinion to discount Dr. Swift's opinion is supported by substantial evidence.

It is well-established that the findings and opinions of treating physicians[3] are generally entitled to substantial weight, and if the opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and uncontradicted by other substantial evidence, they are entitled to controlling weight.  *See Blakley,* 581 F.3d at 406; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529-530 (6th Cir. 1997).  When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 581 F.3d at 406.  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  The ALJ must likewise apply these same factors when considering the weight to give a medical opinion rendered by a non-treating source.  20 C.F.R. § 404.1527(d).  When considering

---

[3] "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting  20 C.F.R. § 404.1502).

the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

Here, plaintiff had no treating physician. Both Dr. Swift and Dr. Wishwick were one-time examining psychologists. Consequently, the ALJ was not required to give either doctor controlling weight; rather, he was simply required to determine how much weight to afford these opinions based on the factors enunciated in 20 C.F.R. 404.1527(d). *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (ALJ not required to give "good reasons" for discounting opinion of one-time examining medical source but should generally give more weight to examining sources than to non-examining ones). In determining how much weight to give Dr. Swift's opinion, the ALJ was required to look at the nature and length of the treatment relationship, the evidence supporting her opinion, and the consistency of her opinion with the record as a whole. *Ealy*, 594 F.3d at 514. The ALJ's decision to afford less than significant weight to Dr. Swift complies with the requirements of 20 C.F.R. § 1527(d) and *Ealy*.

In explaining his decision to discount Dr. Swift's opinion, the ALJ noted that: Dr. Swift was a consultative examiner and not a treating physician; her findings were contradicted by plaintiff's reports of daily activities; and her opinion that plaintiff had "marked" limitations was contradicted by Dr. Wishwick's subsequent finding of only "moderate" limitations and was inconsistent with the record as a whole. The ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Walters*, 127 F.3d at 531. The ALJ properly noted the nature of Dr. Swift's treatment relationship with

18

plaintiff and the inconsistencies with her medical opinion and plaintiff's daily activities, Dr.

Wishwick's opinion, and other medical evidence of record, including the opinion of agency

reviewing psychologist Dr. Voyten, in determining to afford less than significant weight to Dr.

Swift's opinion that plaintiff had marked impairments in her mental functioning.  The ALJ's

finding in this regard is supported by substantial evidence and should not be disturbed by the

Court.  *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).  *See also Boyle v. Sullivan*,

998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir.

1990).

  The Court notes that even where the evidence arguably supports the conclusion the

plaintiff seeks, the reviewing court must uphold the decision of the ALJ if the evidence could

reasonably support the conclusions reached by the ALJ.  *Her v. Comm'r v. Soc. Sec.*, 203 F.3d

388, 389-90 (6th Cir. 1999); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  The ALJ's

determination to discount Dr. Swift's opinion is substantially supported and should be affirmed.

  Lastly, plaintiff argues that the ALJ committed reversible error by not discussing the

opinion of Dr. Kejriwal in his disability determination or accounting for his opinion in

formulating plaintiff's RFC.  The only evidence in the record from Dr. Kejriwal is a two-page

"Basic Medical" form dated on an unknown date in 2008,[4] which appears to have been

completed at the request of the Butler County Department of Job and Family Services.  (Tr. 349-

50).  The form includes plaintiff's subjective reports of having difficulty breathing, a check next

---

[4] Plaintiff asserts that this form was completed on December 30, 2008, while the Commissioner asserts that it is dated July 30, 2008.  Upon review of the form, although it appears to have been dated on the 30th day of a month in 2008, it is impossible to discern the month noted on the form.

to a box that plaintiff's condition is "poor but stable," similar notations that plaintiff is able to walk/stand for three hours in an eight-hour workday, one hour without interruption, and sit for four hours in an eight-hour workday, one hour without interruption. *Id.* Further, the form indicates that plaintiff is moderately limited in her ability to push/pull, bend, reach, and handle and that Dr. Kejriwal opined these limitations would last between nine and 11 months. *Id.*

It is unclear from this two-page form whether plaintiff had any treatment relationship with Dr. Kejriwal. Nor is it apparent from the form what Dr. Kejriwal based his opinions on, other than plaintiff's subjective complaints. While the ALJ has a duty to address all medical opinion evidence of record, 20 C.F.R. § 404.1527(b), the ALJ's failure in this case amounts to harmless error. Dr. Kejriwal opined that the limitations on plaintiff's functional capacity would last between nine and eleven months, which is less than the twelve month durational requirement for a finding of disability under the Act. *See* 20 C.F.R. §§ 404.1505, 416.905. Therefore, even if the ALJ failed to accord any weight to this opinion, Dr. Kejriwal's assessment would not establish that plaintiff was disabled under the Act in any event.

Accordingly, the ALJ's RFC finding is supported by substantial evidence and should be affirmed. Plaintiff's first assignment of error should be overruled.

### 2. The ALJ did not err in refusing to order a consultative examination.

Plaintiff's second and final assignment of error is that the ALJ ignored his duty to develop the record. Plaintiff asserts the ALJ should have ordered a consultative physical examination pursuant to his duty to develop the record on plaintiff's physical conditions, specifically her subjective complaints of difficulty breathing and back, left elbow, and left knee

20

pain.  Lastly, plaintiff argues that the lack of medical evidence substantiating these complaints –

a result of her inability to afford medical treatment – compels a finding that the ALJ's refusal to

order a consultative exam was erroneous and requires a remand.

  The ALJ is required to "consider all evidence available in [an] individual's case record,

and shall develop a complete medical history of at least the preceding twelve months for any

case in which a determination is made that the individual is not under a disability."  42 U.S.C. §

423(d)(5)(B).  Consultative examinations should be requested when the evidence as a whole is

insufficient to formulate a decision on a claim or in situations such as the following:  (1)

additional evidence from a plaintiff's medical sources is required; (2) a medical source has not

provided their records; (3) there is a need for highly technical or specialized evidence not in the

record or available from treating medical sources; (4) the ALJ needs to resolve a conflict,

inconsistency, ambiguity or insufficiency and is unable to do so by contacting treating medical

sources; or (5) there is a change in the plaintiff's condition that will likely affect her ability to

work but the impairment's severity is not established.  20 C.F.R. § 404.1519a.  Notably, the ALJ

is not required to order a "consultative examination at government expense unless the record

establishes that such an examination is *necessary* to enable the [ALJ] to make the disability

decision."  *Landsaw v. Sec'y of H.H.S.*, 803 F. 2d 211, 214 (6th Cir. 1986) (quoting *Turner v.

Califano*, 563 F.2d 669, 671 (5th Cir. 1977)) (emphasis in original).

  Here, plaintiff testified that she has left elbow pain and left arm numbness restricting her

physical abilities due to a prior work injury.  (Tr. 39, 42, 51).  Plaintiff stated she began to

experience this pain and numbness in approximately 2007 and around that time also began

21

having shooting pain sensations in her left leg. (Tr. 56-57). Plaintiff testified that she had never reported her left arm or left leg problems to a doctor. (Tr. 57). Plaintiff asserts that the lack of evidence of record documenting these conditions is a result of her inability to afford medical treatment and the ALJ had a duty to develop this evidence.

The record, however, contains multiple instances of plaintiff's receipt of medical treatment since the onset of her pain despite her financial situation. Plaintiff visited the emergency room several times between 2007 and the date of the ALJ hearing for a variety of conditions. Not only did plaintiff not report arm or leg pain at any of these visits, but the results of concurrent physical examinations were normal. *See* Tr. 254 (December 7, 2007 emergency room notes demonstrate that plaintiff had full range of motion in her back and symmetrical movement in all extremities); Tr. 256 (physical examination from September 9, 2007 revealed normal results of all extremities except for right knee which was swollen from bumping it on furniture); Tr. 262 (at a January 2008 emergency room visit, plaintiff reported neck and back pain with cough but she had a normal physical examination with symmetric reflexes and normal muscle strength and tone); Tr. 301 (in May 2008 plaintiff received emergency room treatment for an infection and allergies and no extremity tenderness was noted); Tr. 294 (June 2008 notes from an emergency room visit show that plaintiff denied loss of strength and loss of sensation); Tr. 371 (notes from a February 2009 emergency room visit indicate that plaintiff had no extremity tenderness and full range of motion in all extremities); Tr. 359 (February 2010 emergency room notes demonstrate that plaintiff had normal 5/5 strength in lower extremities with normal straight leg raising bilaterally).

22

Based on the above, plaintiff has not established that the ALJ was required to order a consultative examination in order to make a disability decision. Plaintiffs seeking disability benefits bear the burden of providing medical evidence demonstrating their impairments and how the impairments affect their functional abilities. 20 C.F.R. §§ 404.1512(c), 416.912(c). As plaintiff testified, her physical conditions existed at the time she applied for DIB and SSI. However, she did not identify her arm, leg, or back pain and/or numbness as an impairment or state that any of these conditions limited her in any way. *See* Tr. 174. The only evidence of plaintiff's left arm and leg pain in the record is her testimony at the ALJ hearing in March 2010. Although plaintiff testified that she had experienced this pain since 2007, plaintiff did not report this condition to any doctor even though she received treatment at various times between 2007 and 2010. Despite plaintiff's purported inability to find low-cost healthcare, there was nothing preventing her from reporting this pain at her various emergency room visits. Further, the results from plaintiff's physical examinations consistently revealed normal findings, full extremity strength, and full range of motion in all extremities. As noted by the ALJ, the medical evidence of record is devoid of any diagnosis or medical opinion that plaintiff is more than minimally limited by these physical conditions. None of the conditions identified by 20 C.F.R. § 404.1519a as necessitating a consultative examination exist in this matter. Therefore, the ALJ's decision to deny plaintiff's request for a consultative examination is substantially supported.

Plaintiff argues that the ALJ should have ordered an examination in accordance with the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX) which provides that "[c]onsultative examinations should be obtained when additional evidence is

23

necessary to establish the nature, severity, and/or duration of the claimant's impairments, and such evidence does not appear to be available from the claimant's sources." Hallex § I-3-7-11(B). Plaintiff asserts that her inability to pay for medical treatment coupled with the lack of medical evidence documenting how her leg, arm and back conditions limit her functional abilities mandate that a consultative examination should have been ordered to provide a full record.

The regulation cited by plaintiff, § I-3-7-11(B), provides an example of when a consultative examination should be ordered: where "[t]he onset of disability occurred less than 12 months ago and the impairment could prevent the claimant from engaging in [substantial gainful activity] for at least 12 months, but there is no prognosis by an examining physician." *Id.* Here, plaintiff's physical conditions were in existence three years prior to the ALJ hearing and approximately one year prior to plaintiff's applications for SSI and DIB; nevertheless, plaintiff did not report them to any doctor nor did she complain about these conditions until the date of her ALJ hearing. Moreover, the clinical evidence demonstrates that plaintiff is not limited by these conditions as she consistently had normal physical examination results. In light of the evidence of record, the ALJ did not err in denying plaintiff's request for a consultative examination as the record evidence was sufficient to make a disability determination. For these reasons, plaintiff's second assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this case be dismissed on the

docket of the Court.

Date: __1/31/2012__

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DEBRA TROXELL,                                 Case No. 1:10-cv-755
     Plaintiff                              Spiegel, J.
                                       Litkovitz, M.J.

     vs

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).